**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: PWG-11-3571 |
| | * | |
| ONE 2003 MERCEDES BENZ CL500, | | |
| VIN WDBPJ75J353A033241, | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Motion for Reconsideration of Denial of Default Judgment, ECF No. 12, that Plaintiff, the United States of America ("the Government"), filed in this forfeiture *in rem* action against Defendant, One 2003 Mercedes Benz CL500, VIN WDBPJ75J353A033241 ("the Mercedes") is pending. For the reasons stated below, the Government's Motion is DENIED.

## I.    BACKGROUND[1]

Surveillance during an investigation by the Drug Enforcement Administration ("DEA") into John Edward Butler, Jr.'s participation in a drug trafficking organization revealed the Mercedes at issue parked in front of Mr. Butler's garage. Aff. of Task Force Officer Mark D. Howard 1–2. Pursuant to warrants, DEA members seized the title to the Mercedes from Butler's home and the Mercedes itself from in front of Mr. Butler's mother's house. *Id.* at 4–5. The Mercedes was seized as "proceeds traceable to the sale or exchange of controlled substances in

---

[1] I described the background of this case in detail in my July 15, 2013 Memorandum Opinion, ECF No. 9, and therefore I shall restate only the salient facts.

violation of 21 U.S.C. § 841" and as a vehicle used in illegal drug activity. Compl. ¶¶ 3 & 5, ECF No. 1.

The Government initiated this action with a Verified Complaint seeking forfeiture of the Mercedes pursuant to 21 U.S.C. § 881(a)(4) and (6), Compl. ¶ 5, and thereafter moved for a default judgment. ECF No. 7. Claimant Gaunzie Hart submitted a letter, which I construed as an answer, asking that the Mercedes be returned to her. ECF No. 8. I struck her answer because it was untimely, and, as no other party had standing to contest the forfeiture, I considered whether the Government had shown that it was entitled to a default judgment of forfeiture. July 15, 2013 Mem. Op. 7, ECF No. 9.

Finding that the Government had met the criteria for publishing notice of the action, a prerequisite to entry of a judgment of forfeiture, I considered "'whether the[] unchallenged factual allegations constitute a legitimate cause of action.'" July 15, 2013 Mem. Op. 6 (quoting *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010)). Noting that "a default judgment is appropriate if the Government has shown the grounds of forfeiture, i.e., a 'substantial connection' between the Mercedes and illicit drug activity, by a preponderance of the evidence," I concluded that "the Government has failed to establish by a preponderance of the evidence that there was a substantial connection between the Mercedes and Mr. Butler's illegal drug activity." *Id.* at 7–8. I explained that, although the Government had shown that "Mr. Butler, who was engaged in illegal drug activity at the time, paid Ms. Hart $4,000 up front for the Mercedes and agreed to pay her an additional $9,500 incrementally," and that "the vehicle was seized in front of a location that Mr. Butler used in drug distribution," the Government had not shown that Mr. Butler's payment to Ms. Hart was proceeds from drug transactions or that "Mr. Butler drove the Mercedes to and from the drug distribution location or that he drove it to

distribute drugs, rather than to visit his mother." *Id*. at 8. On that basis, I denied the Government's motion "without prejudice to refiling it with further facts supporting the connection between the Mercedes and Mr. Butler's illegal drug activity." *Id*. Rather than addressing the shortcoming in its initial motion, the Government filed the Motion for Reconsideration that now is pending.

## II.    STANDARD OF REVIEW

"A motion for reconsideration is appropriate to 'correct manifest errors of law or fact or to present newly discovered evidence,' or where there has been an intervening change in controlling law." *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d. Cir. 1985); citing *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 452–53 (4th Cir. 2005) (stating in dicta that these "rules of constraint . . . make sense when a district court is asked to reconsider its own order" because "'[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience'") (quoting *Potter*, 199 F.R.D. at 553); *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Co. 1988) (observing that a motion for reconsideration "is not a license for a losing party's attorney to get a 'second bite at the apple'"). The three grounds identified in *Potter*, 199 F.R.D. at 552 n.1, are "analogous to three grounds that the Fourth Circuit recognized for [a district court to amend] an earlier judgment under Rule 59(e)," *Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM-08-409, 2010 WL 3059344, at *2 n.1 (D. Md. Aug. 4, 2010), which provide a district court with discretion to grant a motion to amend a judgment "only in very narrow circumstances," *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

## III.    DISCUSSION

### A.  Requirements for Entry of Default Judgment in Forfeiture Action

The Government contends that "the statutory framework and case law demonstrate that the verified, properly published complaint is sufficient [to] warrant entry of default judgment." Gov't Mot. 1.  There can be no quarrel with the notion that "the outcome of a civil forfeiture action does not turn on the liability of any particular person; it turns solely on the nexus between the property and the offense giving rise to forfeiture." *Id.* at 3.  Indeed, the pivotal facts are those that "establish a nexus between the Property and drug activity." *998 Cotton Street*, 2013 WL 1192821, at *10.  Additionally, the Government correctly states that "the entry of judgment in a civil forfeiture action does not involve any finding of liability or culpability.  It merely recognizes the Government's clear title to the defendant property." Gov't Mot. 4; *see United States v. Ursery*, 518 U.S. 267, 295–96 (1996) (Kennedy, J., concurring).  As the Government notes, Gov't Mot. 4 n.3, "proceedings *in rem* are simply structures that allow the government to quiet title to criminally-tainted property in a single proceeding in which all interested persons are required to file claims contesting the forfeiture at one time." *Ursery*, 518 U.S. at 295–96.  That said, Justice Kennedy  recognized that "the forfeiture statutes require proof of a drug trafficking or other offense, . . . to establish that the property was used in a crime."[2]  *Id*. at 296.  It is the failure, to date, of the Government to identify the facts that connect the vehicle itself, as opposed to its owner, to a drug trafficking crime that resulted in the denial of its motion.  The Government is correct that Supplemental Rule G4 governs default judgments in forfeiture *in rem* actions and "provides that a judgment of forfeiture 'may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the

---

[2] The Government neglects to quote this sentence.

court orders.'" *United States v. $85,000.00 in U.S. Currency*, No. WDQ-10-371, 2011 WL 1063295, at *1 (D. Md. Mar. 21, 2011) (quoting Fed. R. Civ. P. Supp. R. G(4)(a)(i)). Yet, Rule 55(b) of the Federal Rules of Civil Procedure also applies.[3] *$85,000.00 in U.S. Currency*, 2011 WL 1063295, at *1. Pursuant to Rule 55(b), the Court cannot enter a default judgment unless it "determine[s] [that] the[] unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); *see $85,000.00 in U.S. Currency*, 2011 WL 1063295, at *2. This means that "[c]ivil forfeiture complaints must 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.'"[4] *Id.* (quoting Fed. R. Civ. P. Supp. R. G(2)(f)). The burden of proof at trial is a preponderance of the evidence, and "[w]hen 'the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense,' it must establish 'a substantial connection between the property and the offense.'" *Id.* (quoting 18 U.S.C. § 983(c)(3).) Put another way, at trial, the Government must show that the property had "more than an incidental or fortuitous connection to criminal activity," even though it "need not [have been] integral, essential, or indispensable to [criminal] activity." *Id.* The factfinder must draw "[r]easonable inferences . . . from the evidence presented to establish a nexus between the Property and drug

---

[3] Certainly, the Government is aware of Fed. R. Civ. P. 55's applicability, as the Government's proposed Default Judgment and Order of Forfeiture states that judgment is entered "[i]n accordance with Rule 55(b)(2) and Rule 58." ECF No. 7-1.

[4] The Government is correct that, when a court requires more than publication before it will enter a default judgment, the court does not "require the Government to establish the *forfeitability* of the property by a preponderance of the evidence." *See* Gov't Mot. 11–12. Rather, the court reviews the complaint for facts sufficient to "support a reasonable belief" that the Government will be able to prove forfeitability *at trial* by a preponderance of the evidence. *See* Fed. R. Civ. P. Supp. R. G(2)(f). To the extent that I held otherwise in my July 15, 2013 Memorandum Opinion, this Memorandum Opinion corrects that holding. *See Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001).

activity." *United States v. 998 Cotton Street, Forsyth County, N.C.*, No. 11-CV-356, 2013 WL 1192821, at *10 (M.D.N.C. Mar. 22, 2013).

For example, in *United States v. $85,000.00 in U.S. Currency*, No. WDQ-10-371, 2011 WL 1063295 (D. Md. Mar. 21, 2011), this Court explained that "a district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear" if the civil forfeiture complaint "'state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial,'" and elaborated that, "[w]hen 'the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense,' it must establish 'a substantial connection between the property and the offense.'" *Id.* at *2 (citations omitted). There, the Government submitted a Declaration from a DEA officer that a canine "'alerted to the presence of a controlled dangerous substance on the four bags of currency,'" which were "'located within the lining of [a woman's] luggage,'" and the woman abandoned the luggage. *Id.* (quoting Decl.). The Court concluded that "these allegations [were] sufficient to establish by a preponderance of the evidence a substantial connection between the Currency and a controlled substance offense.'" *Id.*

In *United States v. $3,156.00 in U.S. Currency*, No. L-10-1128, 2010 WL 4719393 (D. Md. Nov. 15, 2010), Jackson, the man from whom the police seized the defendant currency, was the only person to contest the forfeiture. *Id.* at *1. The Government moved to strike Jackson's claim and enter an order of forfeiture. *United States v. $3,156.00 in U.S. Currency*, No. L-10-1128, Gov't Mot. to Strike 5, ECF No. 5 (D. Md. July 8, 2010) (unpublished). The Court struck Jackson's claim for failure to file an answer, but it did not enter the forfeiture order because the Government had not shown "that a substantial connection exists between the property forfeited

and the criminal activity defined by the statute." *$3,156.00 in U.S. Currency*, No. L-10-1128, Order 4, ECF No. 6 (D. Md. Oct. 28, 2010) (unpublished). Noting that "[t]he affidavit of Special Agent Gwendolyn Price submitted with the original complaint establishes only that Jackson was found to be in possession of both marijuana and the Defendant currency, and that a search revealed prior arrests for violations of the Controlled Substances Act," the Court directed the Government to file a motion for default judgment, accompanied by "additional evidence in the form of affidavits or declarations from which the Court could conclude that a substantial connection exists between the funds seized from Jackson and alleged drug trafficking activity." *Id*. at 4–5.

As in this case, the Government moved to reconsider, contending that a default judgment could be entered based solely on the Verified Complaint it had filed. *$3,156.00 in U.S. Currency*, 2010 WL 4719393, at *1. The Court disagreed, stating:

> [T]he Civil Asset Forfeiture Reform Act, enacted in 2000, requires [the Government] to establish the forfeitability at trial by a preponderance of the evidence . . . . [T]o initiate a complaint [the Government] need only set forth sufficient facts to support a "reasonable belief" that it would be capable of meeting this standard. No longer must the Government demonstrate probable cause in the complaint. Nevertheless, in order to prevail, the Government must be able eventually to prove the grounds of forfeiture by a preponderance of the evidence

*Id.* The Court concluded that the Government did not meet its burden, reasoning, *id.*:

> The verified Complaint states only that a little over $3,000 was found in Jackson's pocket, that he was also in possession of two half-smoked suspected marijuana cigars, that he struggled with police and attempted to destroy one of the cigars, and that he had previously been arrested for unspecified violations of the Controlled Substances Act. Neither the quantity of marijuana nor the sum of money are clearly indicative of distribution. This factor differentiates the instant case from many of the cases cited by the Government, which involve larger sums of money (e.g., $252,300 or $84,615) and other indicia of drug dealing.

The Court ordered the Government to submit a revised affidavit with the additional facts it referenced in its Motion for Reconsideration, i.e., "(i) that the currency was bundled in a manner

typically used by drug dealers, and (ii) that Jackson's small legitimate income was inconsistent with his possession of over $3,000 in cash." *Id.* at *1–2. After the Government submitted a revised affidavit that showed the substantial connection, the Court entered an Order of Forfeiture. *United States v. $3,156.00 in U.S. Currency*, No. L-10-1128, Order of Forfeiture, ECF No. 11 (D. Md. Feb. 24, 2011).

Despite this precedent in our Court and Counsel's familiarity with it,[5] the Government insists to the contrary that proof of publication *alone* is sufficient for entry of default judgment, Gov't Mot. 6–11. First, noting that the Government is entitled to a default forfeiture declaration in an *administrative* forfeiture proceeding "if the Government has given proper notice to all potential claimants . . . and no one has filed a valid claim," the Government insists that "the threshold for entering a default judgment in a judicial forfeiture case *should be* the same as it is for affirming the validity of an administrative forfeiture that is subject to judicial review." *Id.* at 5–6 (emphasis added). The Government provides public policy support for its proposition. *See id.* at 6–7. It is not my place to choose what the standard should be, but rather to enter or deny a default judgment in accordance with the controlling case law and applicable rules. *See Bundens v. J.E. Brenneman Co.*, 46 F.3d 292, 306 (3d Cir. 1995) ("[O]ur task is to interpret, and not to create law . . . ."); *Johnson v. Hubbard*, 698 F.2d 286 (6th Cir. 1983) ("[T]he proper province of the judiciary is to interpret the laws, not to create them."), *abrogated on other grounds as*

---

[5] The Assistant United States Attorney in this case was Counsel for the Government in *$85,000.00 in U.S. Currency* and *$3,156.00 in U.S. Currency*, and therefore should be very familiar with the Court's analyses. For this same reason, he was well-acquainted with the Motion for Reconsideration, as well as the Motion to Strike and the Order disposing of it, in *$3,156.00 in U.S. Currency*. Indeed, Counsel already has argued unsuccessfully before this Court that the Court need not consider the sufficiency of the pleadings when ruling on a motion for default judgment in a forfeiture case. While I do not find Counsel's failure to disclose this history of directly contrary rulings to be a violation of his duty of candor to the Court, *see* Md. Code Pro'f Resp., R. 3.3(a)(3); Loc. R. 704, it comes uncomfortably close.

*recognized in* L&W Supply Corp. v. Acuity, 475 F.3d 737 (6th Cir. 2007); *Seaman v. C. I. R.*, 479 F.2d 336, 338 (9th Cir. 1973) ("Our duty is to interpret the law, not to create it.").

Second, the Government provides abundant case law, purportedly in support of its position. Along with its Motion for Reconsideration, the Government submits a chart identifying twenty-three forfeiture proceedings in which this Court entered default judgments since January 1, 2012, seemingly to show that the Court frequently enters default judgments in forfeiture proceedings where "someone . . . triggered the Government's obligation to commence a judicial action by filing a claim in the administrative forfeiture proceeding pursuant to [18 U.S.C. §] 983(a)(2), only to fail to file a valid claim in the judicial action pursuant to Section 983(a)(4)." Gov't Mot. 7 & Ex. A, ECF No. 12-1. Notably, in only one case is the defendant a vehicle, rather than currency, *see United States of America v. One 2006 Nissan Armada, LE*, No. JKB-12-2229, such that the Government has not shown that this Court enters default judgments with regard to defendant vehicles with any regularity. Also, within its Motion, the Government catalogs twenty-two cases from thirteen other jurisdictions, none of which is controlling authority, to demonstrate that "most courts grant default judgments in civil forfeiture cases based only on a finding that the court has jurisdiction over the case and the property, and that the government has provided adequate notice of the forfeiture action to all potential claimants, as the Due Process Clause requires." Gov't Mot. 8.

It appears that the Government has cited these cases selectively to support the proposition that I should reconsider my denial of its Motion for Default Judgment and Order of Forfeiture. Far more significant is what the Government has omitted from its discussion of the cited cases. A fair reading of these cases in their entireties supports the conclusion reached here, that, at least in this district and perhaps more broadly, the Government has the obligation to provide sufficient

facts to support a reasonable belief that the Government will be able to demonstrate a substantial connection between the defendant property and the alleged criminal conduct by a preponderance of the evidence at trial. Indeed, after arguing for the Court to "grant[] the Government's motion for a default judgment based on its finding that the Government complied with the notice requirements in Rule G(4)," the Government acknowledges that "a minority of courts do review the sufficiency of the facts alleged in the Government's verified complaint before entering a default judgment" to determine whether the complaint, as required by Rule G(2)(f), "set[s] forth sufficient facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Gov't Mot. 11–12. Regardless of whether this is a minority viewpoint nationwide, it is a position well supported by other similar actions in the District of Maryland.

### B. Case Precedent

#### 1. The District of Maryland

A review of the cases that the Government cites provides guidance. In each case in our district,[6] as in the case before me, the Government submitted its complaint accompanied by a supporting affidavit, in which the affiant, typically a special agent or task force officer of the Drug Enforcement Administration ("DEA"), stated the facts "to support a reasonable belief that the [defendant vehicle or] United States currency constitutes . . . things of value furnished and intended to be furnished in exchange for a controlled substance" or "proceeds traceable to such an exchange" or money "used and intended to be used to facilitate a [controlled dangerous substances ('CDS')] violation." In each case the Government identifies, the Court's default judgment order was unaccompanied by a memorandum opinion and did not reveal the Court's

---

[6] The Assistant United States Attorney in this case was Counsel for the Government in sixteen of the cases before this Court, yet again confirming that he is familiar with the facts that have been before the Court for consideration on motions for default judgments in civil forfeiture actions.

analysis or the extent to which the Court considered those facts. But, in eight of the cases, the Court stated in its order that "there was reasonable cause for the seizure of the defendant property under 28 U.S.C. § 2465," suggesting that the Court gave some thought to the connection between the property and the alleged illegal activity. *See United States of America v. $4,793 U.S. Currency*, No. RWT-12-1908; *United States of America v. $4,570 U.S. Currency*, No. AW-12-723; *United States of America v. $6,775 U.S. Currency*, No. RWT-12-725; *United States of America v. $29,850.00 in U.S. Currency*, No. WMN-12-757; *United States of America v. $102,080.00 in U.S. Currency*, No. WDQ-12-1073; *United States of America v. $30,333 in U.S. Currency, One Rolex Watch, One Cartier Watch, and One Breitling Watch*, No. RDB-12-1174; *United States of America v. $7,700.00 in U.S. Currency*, No. RWT-12-1909; *United States of America v. $19,900 U.S. Currency*, No. DKC-12-2349.

Moreover, a review of the facts incorporated into the verified complaint in each case shows that they were sufficient to support a reasonable belief that the Government would be able to prove by a preponderance of the evidence at trial that there was a substantial connection between the defendant property and the alleged criminal activity. In two cases, the arrestee admitted the nexus between the defendant currency and his CDS violation. *See $4,793 U.S. Currency*, No. RWT-12-1908 (arrestee said that "[the] money was drug proceeds"); *United States of America v. $10,560.00 in U.S. Currency*, No. JKB-12-2082 (arrestee said that the money "was proceeds from the sale of marijuana"). In those cases, the connection could not be clearer. In all but one of the other cases in which the defendant was U.S. currency, at least two, and often three, of the following were true: (1) the defendant currency was seized along with CDS, and/or CDS packaging material or paraphernalia; (2) the arrestee had a criminal history, often including CDS charges; and (3) the arrestee either had no wage history or minimal wages

that were disproportionate to the amount of currency seized. *See United States of America v. $24,640.00 in U.S. Currency*, No. JKB-11-2714; *United States of America v. $3,080 in U.S. Currency*, No. WDQ-11-2918; *United States of America v. $8,251.00 in U.S. Currency*, No. BPG-11-3213; *United States of America v. $26,214.00 in U.S. Currency*, No. GLR-12-172; *United States of America v. $4,320.00 in U.S. Currency*, No. WMN-12-320; *$4,570 U.S. Currency*, No. AW-12-723; *$6,775 U.S. Currency*, No. RWT-12-725; *$29,850.00 in U.S. Currency*, No. WMN-12-757; *$30,333 in U.S. Currency, One Rolex Watch, One Cartier Watch, and One Breitling Watch*, No. RDB-12-1174; *$7,700.00 in U.S. Currency*, No. RWT-12-1909; *United States of America v. $121,940.00 in U.S. Currency*, No. ELH-12-1500; *United States of America v. $7,785.00 in U.S. Currency*, No. MJG-13-452; *United States of America v. $9,054 in U.S. Currency*, No. ELH-13-378; *United States of America v. $12,355 in U.S. Currency*, No. RDB-12-1930; *United States of America v. $11,000 in U.S. Currency*, No. WMN-13-295; *United States of America v. $19,880 in U.S. Currency*, No. RWT-13-415; *$19,900 U.S. Currency*, No. DKC-12-2349; *United States of America v. $32,500 in U.S. Currency*, No. WDQ-13-90; *United States of America v. $150,000.00 in U.S. Currency*, No. RDB-13-313.

For example, in *$24,640.00 in U.S. Currency*, No. JKB-11-2714, a DEA special agent stated that an individual was arrested after being found in possession of "9 large freezer bags of marijuana . . . packaged in a compressed form that is consistent with drug trafficking." Decl., ECF No. 1 in JKB-11-2714. The DEA executed a search of the arrestee's home, recovering the defendant currency, marijuana, weapons, and CDS packaging material. *Id.* The arrestee and the co-habitant of the home, who filed a claim for the currency, each had prior charges for CDS violations. *Id*. The arrestee had no wage history, and the claimant had a wage history of no more than $42,238 per year. *Id.* Similarly, in *$3,080 in U.S. Currency*, No. WDQ-11-2918, a

DEA special agent stated that an individual with prior arrests for CDS violations and no wage history was found in possession of the defendant currency during a search of a residence which contained "approximately 20 grams of suspected cocaine packaged for street level distribution, CDS packaging material and CDS paraphernalia." Decl., ECF No. 1 in WDQ-11-2918. Thus, the facts abundantly supported a reasonable belief that the Government could prove at trial that a substantial connection existed between the defendant currency and the alleged criminal conduct. *See United States v. $85,000.00 in U.S. Currency*, No. WDQ-10-371, 2011 WL 1063295, at *2 (D. Md. Mar. 21, 2011).

In *$102,080.00 in U.S. Currency*, No. WDQ-12-1073, the defendant currency was a large sum of money contained in a duffel bag that a police officer recovered following a traffic stop of an Acura driven by Harris. Decl., ECF No. 1 in WDQ-12-1073. The vehicle also contained cologne, a driver's license for an individual other than Harris, and a capsule of heroin. *Id.* Harris was stopped after leaving a hotel where the DEA was investigating possible narcotics distribution; he was carrying the duffel bag when he left. *Id.* A subsequent search of the hotel room that the DEA identified revealed "over 3.0 kg of a substance that later tested positive for heroin," mostly in block form but also "in gelatin capsules of the same type found in the Acura." *Id.* Harris's fingerprints were found on the heroin packaging. *Id.* Thus, although the affiant did not mention Harris's criminal history or his reported earnings, the Court could find that the facts were sufficient for it to form a reasonable belief that the DEA could prove by a preponderance of the evidence that the $102,080.00 in U.S. Currency was substantially connected to distribution of CDS. *See $85,000.00 in U.S. Currency*, 2011 WL 1063295, at *2.

In the one case that the Government lists in which the *res* subject to forfeiture was a vehicle, as in this case, *One 2006 Nissan Armada, LE*, No. JKB-12-2229, the driver of the

defendant vehicle "met another individual, who was also in a vehicle, in a manner consistent with a drug transaction," and, when stopped by the police, "admitted . . . that she sold marijuana to two different subjects" and that she "had approximately 4-5 ounces of 'weed' (marijuana) in the 2006 Nissan Armada."   Decl., ECF No. 1 in JKB-12-2229.   The investigators seized approximately 46 grams of cocaine, approximately 5 grams of heroin, approximately 96 grams of marijuana, and a digital scale from the defendant vehicle.  *Id.*  On those facts, the Court could hold a reasonable belief that the Government  would be able to prove a substantial connection between the vehicle and the CDS violation at trial.  *One 2006 Nissan Armada, LE*, No. JKB-12-2229, is markedly different from the case before me, in which, judging from the contents of the Verified Complaint and accompanying Declaration, no CDS or CDS packaging materials or paraphernalia were recovered from the Mercedes; no drug transactions were witnessed happening in or from the Mercedes; and the owner of the Mercedes did not admit that the Mercedes was involved in any illegal activities.

### 2.  Other Districts

As for the cases that the Government cites from other jurisdictions, the Government is correct that in some instances, other courts grant default judgment on proof of publication alone when no one files a claim in the judicial proceeding.  *See United States v. U.S. Currency in Amount of $13,000*, No. 12-811-CV-C-NKL, 2012 WL 5422316 (W.D. Mo. Nov. 6, 2012); *United States v. $2,041.00 in U.S. Currency*, No. 12-CV-87, 2012 WL 6953388 (E.D. Tex. Oct. 30, 2012), *report and recommendation adopted*, 2012 WL 356707 (E.D. Tex. Jan. 29, 2013); *United States v. 15 Trimont Lake Road*, No. 2:10cv16, 2011 WL 309921 (W.D.N.C. Jan. 28, 2011); *United States v. $186,907.00 in U.S. Currency*, No. 07-3229 (DSD/SRN), 2008 WL 2331610 (D. Minn. June 3, 2008); *United States v. Real Property Known & Numbered as 2621*

*Bradford Dr., Middletown, Butler Cnty., Ohio*, No. 07-cv-875, 2008 WL 630601 (S.D. Ohio

March 7, 2008); *United States v. $138,381 in U.S. Currency*, 240 F. Supp. 2d 220, 233

(E.D.N.Y. 2003); *United States v. Cadillac One 2002 Escalade, V# 3GYEK63N82G226161,*

*MODEL EXT E–SPORT*, No. 02-C-7015, 2003 WL 22220264 (N.D. Ill. Sept. 25, 2003).[7]

Significantly, none of these cases is controlling authority.

Moreover, in  some of the cases that the Government cites from other jurisdictions—as

well as in cases from other jurisdictions that the Government does not cite—courts have

considered whether the Government identified sufficient facts establishing a substantial

connection between the defendant property and criminal activity for the court to enter a default

judgment of forfeiture.  For example, the Government cites *United States v. 2007 Ford F-150*

*Pickup Truck, License Number 8X28407, VIN: 1FTPW12V67KA73125*, No. 11-cv-783-AWI-

SKO, 2011 WL 6100850 (E.D. Cal. Dec. 6, 2011), for the propositions that "default judgments

save the government from spending additional time and effort litigating an action in which no

claimants have appeared," and that "[m]erits-based decisions . . . are not practical where there is

no claimant."  Gov't Mot. 8.  More saliently, the United States District Court for the Eastern

District of California stated in that case:

> Pursuant to the Supplemental Rules, the Government must file a verified
> complaint that . . . *includes sufficient factual detail to support a reasonable belief*
> *that the Government will be able to meet its burden of proof at trial. Fed. R. Civ.*
> *P. Supp. R. G(2).* With regard to the sufficiency of the factual detail of the
> verified complaint, the Government is not required to show a relationship between
> the proceeds of a drug crime and a specific drug transaction. Rather,
> circumstantial evidence may support the forfeiture of the proceeds of a drug
> crime.

---

[7] The Government also cites *United States v. 2 North Adams St.*, 2011 WL 6714519, *1 (D.D.C.
Mar. 30, 2011), but this case is not available to the Court on Westlaw, and the Government has
not provided a copy of the opinion.

*2007 Ford F-150 Pickup Truck*, 2011 WL 6100850, at *3 (emphasis added) (citations omitted).
The magistrate judge concluded that "the allegations of the verified complaint indicate that the
defendant vehicle was used as payment for a drug debt owed by Strickland to Montalvo." *Id.* at
*4. She reasoned that "[n]ot only did the [confidential source] indicate that the defendant vehicle
was to be used to furnish payment on a drug debt, Montalvo admitted in an interview that the
defendant vehicle was payment of a drug debt." *Id.*; *see also United States v. Real Property
Located at 730 Glen-Mady Way*, 590 F. Supp. 2d 1295, 1300 (E.D. Cal. 2008) (considering the
"factual basis for forfeiture" and concluding that "the allegations in the complaint establish[ed]
that the defendant real property [was] subject to forfeiture" because they "show[ed] that [the
record owner of the defendant property] engaged in an investment fraud scheme that fleeced
numerous victim/investors of millions of dollars, and that a portion of those fraud proceeds can
be traced directly to the purchase of the defendant real property," and that "the real property
itself was purchased as part of a larger money laundering conspiracy, and was derived not just
from investment fraud proceeds, but also from false statements made in the loan application used
to secure the financing to purchase the property");[8] *United States v. One 2001 Ford F350, VIN:
1FTWX33S41EC47403*, No. L–10–84, 2011 WL 147715 (S.D. Tex. Jan. 18, 2011) (granting
default judgment against defendants "2009 utility gooseneck trailer" and Ford F350 that towed
trailer because facts in complaint, such as that canine alerted to CDS in trailer, were "sufficiently
detailed facts to support a reasonable belief that the government will be able prove at trial that
the property has been forfeited"); *United States v. 1999 Nissan Skyline R34*, No. 08-cv-2372-
CMA-CBS, 2009 WL 2407683, at *2 (D. Colo. Aug. 5, 2009) ("As Mr. Hillman, in conjunction

---

[8] The Government characterized this case simply as one in which the court "grant[ed] default
judgment when no one filed a timely claim." Gov't Mot. 11. In truth, it is much more than that,
when one looks at the record facts establishing the nexus between the *res* and the criminal
activity warranting its forfeiture.

with a wire fraud scheme, used funds traceable to wire fraud proceeds to purchase Defendant 1999 Nissan Skyline R34, it is thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and (b)(2).").

According to the Government, in *United States v. $16,010.00 in U.S. Currency*, No. 11-945, 2011 WL 2746338 (D.N.J. July 13, 2011), the United States District Court for the District of New Jersey "review[ed] the procedural requirements of Rule G in detail and grant[ed] default judgment after finding that the Government followed the procedures and claimant, who filed a claim in the administrative forfeiture proceeding, did not file a timely claim under Rule G(5)." Gov't Mot. 9. As the Government reads it, the court engaged in "no discussion of the factual sufficiency of the complaint." However, in *$16,010.00 in U.S. Currency*, 2011 WL 2746338, after noting that "t[he plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action before default judgment can be entered," and that "[a] plaintiff is not entitled to entry of default judgment against a defendant as of right, because the entry of such judgment is left to the discretion of the district court," the court stated that "[t]he Verified Complaint must . . . state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* at *4. The court recited the facts presented in the complaint, such as that the currency, "in five bundles secured by multi-colored rubber bands," was recovered from a vehicle that also contained CDS, a loaded handgun, and a "drug ledger," and the driver of the vehicle had a criminal history and no wage history. *Id.* at *1–3. Identifying the relevant paragraphs of the complaint, the court concluded that the complaint "state[d] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* at *5.

Likewise, according to the Government, in *United States v. $11,491.00 in U.S. Currency*, 2010 WL 4569951 (C.D. Ill. Oct. 29, 2010), the "court enters default judgment and order of forfeiture based on publication of notice and failure of anyone to file a claim," without any "discussion of the adequacy of the complaint or the sufficiency of the evidence." Gov't Mot. 10. However, before entering the default judgment, the court noted that "the government ha[d] probable cause to believe [the defendant currency] was furnished or intended to be furnished in exchange for a controlled substance in violation of Title II of the Controlled Substances Act," suggesting that the court considered, not whether there were sufficient facts to support a reasonable belief, but rather, the earlier, higher standard of probable cause. *$11,491.00 in U.S. Currency*, 2010 WL 4569951, at *1; *see United States v. $3,156.00 in U.S. Currency*, No. L-10-1128, 2010 WL 4719393 (D. Md. Nov. 15, 2010) ("No longer must the Government demonstrate probable cause in the complaint.").

The Government contends that, in *United States v. 1999 Lexus GS400*, No. 05-1139-PJH, 2007 WL 1056791 (N.D. Cal. April 6, 2007), the court held that "a court may enter a default judgment as to any unclaimed property, as long as the Government shows it has complied with all notice requirements." Gov't Mot. 10. Yet, the court also noted that "default judgment may be entered under Rule 55(b)" because "[b]y his or her default, the true owner of the [defendants] Davis Industries P-380 handgun and accompanying 380 caliber ammunition has admitted the well-pleaded averments of the complaint, including that the property is subject to forfeiture because it was used or intended to be used to facilitate the transportation, sale, receipt, possession and concealment of controlled substances and proceeds thereof." *1999 Lexus GS400*, 2007 WL 1056791, at *3. Specifically, in the complaint, the Government stated that the arrestee "used two vehicles in the course of his drug trafficking activities, and kept a handgun in his

vehicle when making drug sales," according to a confidential informant, and police officers seized "drugs, $3,745 in cash, and a loaded Davis Industries P-380 handgun" from the defendant vehicle, which the arrestee "was driving . . . to meet the informant at a police-arranged meeting." *Id.* at *1.[9]

Similarly, the Government asserts that, in *United States v. Twenty Three Thousand Three Hundred And Twenty Three Dollars ($23,323.00) in U.S. Currency*, No. 09-428 JMS-LEK, 2010 WL 532441 (D. Haw. Feb. 16, 2010), *report and recommendation adopted*, 2010 WL 935198 (D. Haw. March 11, 2010), the magistrate judge stated that "entry of a default judgment prevents the Government from having to expend further time and effort on a case that has no opposing party." Gov't Mot. 8. It is more instructive that the judge also stated that, "[b]efore a court may order forfeiture, the government must prove by a preponderance of the evidence that forfeiture is warranted," *$23,323.00 in U.S. Currency*, 2010 WL 532441, at *5, and she observed that the defendant property was seized, along with CDS, from an individual who was under surveillance for CDS distribution, following a controlled buy, *id.* at *1. The judge concluded that the complaint "establish[ed] that the defendant property is 'moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, ... proceeds traceable to such an exchange, [and/or] moneys ... used or intended to be used to facilitate any violation of this subchapter,'" and that "the defendant property constitutes or was derived from proceeds traceable to the knowing or intentional distribution, or possession with intent to distribute, a controlled substance." *$23,323.00 in U.S. Currency*, 2010 WL 532441, at *5; *see also, e.g.*, *United States v. $19,960.00 in U.S. Currency*, No. CV 11-2394 MMM, 2013 WL 2456800, at *1 (C.D. Cal. June 6, 2013) (granting default judgment on

_____

[9] The forfeiture claims regarding the defendant vehicle and currency were not before the court. *See id.* at *2.

government's amended motion, after denying initial motion for default judgment because the government "failed to show by a preponderance of the evidence that the defendant currency was substantially connected to drug-related activity and therefore subject to forfeiture"); *United States v. One 2004 Case Int'l Compact Tractor, Model D-35, Serial No. HBA017288*, No. 09-CV-688 (WMc), 2009 WL 2382421, at *3 (S.D. Cal. Aug. 3, 2009) (stating that "[b]efore an asset may be forfeited under the Civil Asset Forfeiture Reform Act ('CAFRA'), the government must prove by a preponderance of the evidence that forfeiture is warranted," and that "the United States has carried its burden" in its default judgment motion by "offer[ing] uncontested proof in a verified complaint that Defendant was used, or intended for use, to transport, or to facilitate the transportation, sale, receipt, possession and concealment of a controlled substance," i.e., the real property owner admitted that the defendant tractor "was used to grade a portion of the property upon which [his son] erected the tan shed the [owner and his son] used for commercial indoor marijuana production"); *United States v. Twenty Seven (27) Assorted Firearms*, No. SA-05-CA-407-XR, 2005 WL 2645010, at *4 (W.D. Tex. Oct. 13, 2005) ("The burden of proof [for entry of default judgment of forfeiture] is on the government to establish, by a preponderance of evidence, that the property is subject to forfeiture and that there was a substantial connection between that property to be forfeited and the criminal activity. 18 U.S.C. § 983. The government alleges that [the owner of the defendant firearms] knowingly and willfully purchased and sold the twenty-seven assorted firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) . . . . After reviewing the government's verified complaint, the Court finds that the government has met its burden of proof.").

### C. The Facts of this Case

In its reluctant recognition that, despite its reconsideration motion, I yet might follow the purported "minority of courts" that "do review the sufficiency of the facts alleged in the Government's verified complaint before entering a default judgment," the Government argues that "the facts set forth in the complaint [and accompanying Declaration] are sufficient to satisfy the pleading requirement in Rule G(2)(f)." Gov't Mot. 14. The Government asserts that the Declaration establishes that "Butler . . . was a member of a violent drug trafficking organization" who was under investigation and ultimately arrested. *Id.* Additionally, prior to his arrest, "Butler engaged in numerous monitored telephone conversations regarding an upcoming cocaine transaction," during which time "the defendant vehicle was observed at the Butler's residence." *Id.* at 15. Also, Ms. Hart "sold the vehicle to Butler for cash," and "the police recovered the vehicle at Butler's mother's residence, a location that Butler had used for the storage and distribution of cocaine." *Id.* The Government "concedes that this evidence may not be sufficient to establish the forfeitability of the defendant vehicle by a preponderance of the evidence," but insists that "this evidence would be deemed sufficient to support a reasonable belief that the drug dealer purchased the vehicle with drug money and used it as a means of transportation to and from locations where drug transactions were being planned, and where drugs were stored and distributed." *Id.*

I disagree. This is not a case where the Government has demonstrated a clear nexus between the defendant property and the illegal activity, or the necessary "sufficiently detailed facts" for me to have a reasonable belief that the Government will be able to show that connection at trial. *See* Fed. R. Civ. P. Supp. R. G(2)(f). *Cf. $4,793 U.S. Currency*, No. RWT-12-1908 (arrestee said that "[the defendant] money was drug proceeds"); *United States of*

*America v. $10,560.00 in U.S. Currency*, No. JKB-12-2082 (arrestee said that the defendant currency "was proceeds from the sale of marijuana"); *see also United States v. Real Property Located at 730 Glen-Mady Way*, 590 F. Supp. 2d 1295, 1300 (E.D. Cal. 2008) ("the real property itself was purchased as part of a larger money laundering conspiracy"); *1999 Nissan Skyline R34*, 2009 WL 2407683, at *2 ("funds traceable to wire fraud proceeds [were used] to purchase Defendant 1999 Nissan Skyline R34"); *United States v. 2004 Yukon Denali, License Number 5RYR294, VIN: 1GKEK63U44J262979*, No. 06-cv-870-OWW-GSA, 2007 WL 3341341, at *5 (E.D. Cal. Nov. 9, 2007) ("the owner . . . allegedly purchased the defendant vehicle for $10,000.00, with drug proceeds"). *See generally United States v. 2007 Ford F-150 Pickup Truck, License Number 8X28407, VIN: 1FTPW12V67KA73125*, No. 11-cv-783-AWI-SKO, 2011 WL 6100850 (E.D. Cal. Dec. 6, 2011) ("the allegations of the verified complaint indicate that the defendant vehicle was used as payment for a drug debt").

What the Government has shown is that Butler paid an initial $4,000 for the Mercedes and promised an additional $9,500. But the Government has not shown that Butler's wage history is such that an outlay of $4,000 is unlikely to be from legitimate, reported income. *See United States v. $3,156.00 in U.S. Currency*, No. L-10-1128, 2010 WL 4719393, at *1–2 (D. Md. Nov. 15, 2010) (denying motion for default judgment where "the sum of money [was not] clearly indicative of distribution" and ordering the government to submit a revised affidavit with additional supporting facts, such as that the person possessing the defendant currency had a "small legitimate income [that] was inconsistent with his possession of over $3,000 in cash"); *United States v. 2007 BMW Convertible 650i, VIN: WBAEK13577CN80379, License Number 6CBS415*, No. 09-cv-12-OWW-SMS, 2009 WL 3617577, at *5 (E.D. Cal. Oct. 27, 2009) (concluding that "[t]he totality of the circumstances reflects that a substantial connection

between the [defendant BMW] and the related drug offenses . . . was demonstrated" and granting default judgment where "[t]he complaint detailed two controlled buys of large quantities of methamphetamine from Jorge Leal"; a search of his residence "revealed over seventeen grams of methamphetamine"; and "records revealed that Jorge Leal had not worked for two years," nor had his family members, such that "the Leal family would not be able to afford luxury vehicles without drug proceeds as income"); *United States v. 2005 Infiniti QX56, VIN: 5N3AA08A25N806191, License Number 6AEJ980*, No. 09-cv-12-OWW-SMS, 2009 WL 3617581, at *5 (E.D. Cal. Oct. 27, 2009) (same, with regard to other vehicles owned by same family); *United States v. One Lot Jewelry*, 749 F. Supp. 118, 123 (W.D.N.C. 1990) (where claimants in forfeiture proceeding had combined income that was disproportionately low for their "extravagant life style that included the purchase of several residences, an interest in a restaurant, the purchase of several automobiles, the purchase of the jewelry, and the possession of [approximately $6,000 in] currency," jury in criminal trial had "concluded that the discrepancy was a result of [claimant's] drug dealing activities").  In all but one of the other cases the Government identified before this Court, the Government checked the wage history of the person associated with the defendant property and incorporated that fact into the declaration that accompanied its complaint.  It may be that this minimal effort would be sufficient to set forth the facts necessary for me to have a reasonable belief that the Government will be able to prove by a preponderance of the evidence that Butler purchased the Mercedes with drug proceeds.  Regrettably, to date, the Government has not felt it necessary to expend this minimal effort.

The Government also has established that the Mercedes was in front of Butler's garage during the time period in which Butler conducted telephone calls regarding a drug buy.  In

addition, the Government has shown that the Mercedes was parked at Butler's mother's residence, and that Butler used his mother's residence for cocaine storage and distribution. But the Government has not established that cocaine ever was transported in the Mercedes, such as by showing that a canine alerted to the presence of CDS in the vehicle or that CDS, packaging materials or paraphernalia were found in the defendant vehicle. *Cf. One 2006 Nissan Armada, LE*, No. JKB-12-2229 (investigators seized CDS and digital scale seized from vehicle); *One 2001 Ford F350*, 2011 WL 147715 (canine alerted to CDS in defendant trailer); *United States v. 2006 Dodge Crew Cab Pickup Truck, VIN: 1D7HA18266S610029, License Number: 7Y86727*, No. 07-cv-387-OWW-TAG, 2008 WL 2073974, at *2-3, 5 (E.D. Cal. May 14, 2008) ("four packages of methamphetamine [were taken] from the Defendant vehicle to show to an undercover officer" and search revealed methamphetamine and handgun in vehicle); *2004 Yukon Denali*, 2007 WL 3341341, at *6 ("a narcotic detecting canine alerted to the currency which was packaged in plastic and placed in bundles in various bags" in the defendant vehicle). And the Government has not demonstrated that Butler drove the Mercedes to engage in drug trafficking. *Cf. One 2006 Nissan Armada, LE*, No. JKB-12-2229 (the driver of the defendant vehicle "met another individual, who was also in a vehicle, in a manner consistent with a drug transaction"); *One Lot Jewelry*, 749 F. Supp. at 123 (substantial connection between defendant Mercedes and criminal activity existed where, *inter alia*, defendant vehicle was used to transport drugs). Significantly, the Government has not alleged that the Mercedes was Mr. Butler's only vehicle at the time or that he never visited his mother's residence without engaging in cocaine distribution. If either were the case, then I could reasonably believe that, on at least some of the occasions that Mr. Butler drove the Mercedes to his mother's residence, he drove it there to engage in drug trafficking.

## IV.    CONCLUSION

In sum, this Court may enter a default judgment in a civil forfeiture case when "the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders," Fed. R. Civ. P. Supp. R. G(4)(a)(i), and the complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," Fed. R. Civ. P. Supp. R. G(2)(f).  *See United States v. $85,000.00 in U.S. Currency*, No. WDQ-10-371, 2011 WL 1063295, at *1 (D. Md.  Mar. 21, 2011).  The Government has not presented any newly-discovered evidence, and the Government's Verified Complaint and accompanying Declaration do not contain "sufficiently detailed facts to support a reasonable belief" that, at trial, the Government will be able to prove the nexus between the Mercedes and Mr. Butler's criminal activity by a preponderance of the evidence.  *See* Fed. R. Civ. P. Supp. R. G(2)(f).  Therefore, a motion for reconsideration is not appropriate.  *See Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430, 452–53 (4th Cir. 2005).  The Government's Motion for Reconsideration is DENIED. Nonetheless, the Government is not precluded from refiling or supplementing its Motion for Default Judgment with additional facts supporting the connection between the Mercedes and Mr. Butler's drug trafficking.

A separate order shall issue.

Dated: <u>October 3, 2013</u>                    <u>          /S/          </u>
                                                          Paul W. Grimm
                                                          United States District Judge


lyb